**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| SABRIYANA M. SINGH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-00-2168 |
| PRUDENTIAL HEALTH CARE PLAN, INC., | * | |
| Defendant. | * | |

\* \* \* \* \*

## MEMORANDUM OPINION

This action involves a suit brought by Sabriyana M. Singh ("Singh" or "Plaintiff") against Prudential Health Care Plan, Inc. ("Prudential" or "Defendant") seeking, *inter alia*, reimbursement of monies Singh paid to Prudential pursuant to a subrogation term in her employee benefit plan. Currently pending before the Court is Plaintiff's Motion to Certify Class [48], Plaintiff's Motion for Order Certifying Class [62], Plaintiff's Motion for Partial Summary Judgment [66], and Defendant's Motion to Strike [73]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Plaintiff's Motion to Certify Class and enter partial summary judgment on the issue of liability in favor of Plaintiff.

**I.     FACTUAL & PROCEDURAL BACKGROUND**

The following facts are taken in the light most favorable to the non-movant. In March 1998, Singh was involved in an automobile accident. Prudential, an HMO that contracted with Singh's employer to

provide employees with healthcare benefits pursuant to an employee benefit plan (the "Plan"),[1] paid Singh compensation for her injuries. Additionally, Singh successfully pursued legal remedies against the other party involved in the car accident. As a result, in February 1999, Allstate Insurance Company paid Singh $5,000 in compensation for her injuries.

Based on a clause in the Plan, which allowed Prudential to recover monies paid out to members in the event that the member received compensation from a third party, Prudential brought a subrogation claim against Singh for the full amount of its payment to her. In September 1999, Singh paid $950.12 in satisfaction of Prudential's subrogation claim.

In March 2000, the Maryland Court of Appeals considered the question of whether subrogation claims by HMOs were permissible pursuant to the Maryland HMO Act, Md. Code Ann., Health-General § 19-712.1 (1999) ("Maryland HMO Act"). *Reimer v. Columbia Medical Plan*, 747 A.2d 677, 683 (Md. 2000) (members sued Columbia Medical Plan, Inc. for reimbursement of subrogation payments).

---

[1]The Court provides the following abbreviated description of the operation of HMOs, discussed at length by the Maryland Court of Appeals in *Reimer v. Columbia Medical Plan, Inc.*, 747 A.2d 677, 680-81 (Md. 2000). An HMO is a vertical system of health care that facilitates medical services by bringing together healthcare providers (*i.e.*, physicians, dentists, etc.) with healthcare subscribers (*i.e.*, the individual members of the HMO who receive medical services). HMOs enter into two relevant contractual relationships: (1) HMOs contract with individuals or employers of individuals whereby the HMO receives a subscription fee in exchange for providing individuals or employers with below-rate medical services; (2) HMOs contract with physicians whereby physicians agree to offer below-rate medical services in exchange for the HMO bringing the physicians a large number of subscribers (patient/clients). As such, it is through bulk buying power that HMOs are able to procure medical services below otherwise prevailing rates. Additionally, for-profit HMOs make money based on their presumption that, for the majority of subscribers, the provided medical services will cost less than the membership fees received by the HMO. In this case, the Plan was the contractual document that governed Prudential's relationship with Singh, as a Prudential subscriber.

The Maryland HMO Act provided, in pertinent part, that HMOs may provide health care services "on a *prepaid* basis." *Id.* (emphasis added). The *Reimer* court interpreted this language to bar subrogation claims by HMOs against their subscribers. *Id.* at 683 ("[A]n HMO may not pursue its members for restitution, reimbursement, or subrogation after the members have received a financial settlement from a third-party tortfeasor, any contract to the contrary notwithstanding.").

On May 18, 2000, the Maryland state legislature, in response to the holding in *Reimer*, enacted Senate Bill 903, which provides that an HMO *may* pursue subrogation claims against recoveries made by their members against third parties, effective June 1, 2000. The bill — which nullified *Reimer* — applied retroactively to all subrogation recoveries by HMOs made since January 1, 1976.

In May 31, 2000, Singh filed a class action suit in Maryland state court, arguing that the subrogation provision in the Plan was illegal under the Maryland HMO Act.

On July 14, 2000, Prudential removed the case to this Court on the basis of federal question jurisdiction, arguing that the Plan was regulated under the Employee Retirement Income Security Act, 29 U.S.C. 1001, *et seq.* ("ERISA"), and not by Maryland state law. Singh filed a motion to remand to Maryland state court, arguing that her claims were not preempted by ERISA pursuant to ERISA's "savings clause," 29 U.S.C. § 1144(b)(2)(A), and that she was not seeking impermissible alternative remedies to ERISA's enforcement provisions, 29 U.S.C. § 1132. Prudential filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Singh failed to state a claim under ERISA.

On December 14, 2000, this Court held a hearing as to the outstanding motions. The Court denied the motion to remand, finding that Singh's claims were indeed preempted under ERISA and could not be saved pursuant to the "savings clause." The Court also granted Prudential's motion to dismiss, both

3

because state law ERISA claims that are preempted must be dismissed and because Senate Bill 903 plainly allowed HMOs to pursue subrogation claims against their members. Singh appealed this Court's decision to dismiss her case.

In August 2002, the Maryland Court of Appeals considered the constitutionality of Senate Bill 903, and specifically its retroactivity provisions. *Dua v. Comcast Cable of Maryland, Inc.*, 805 A.2d 1061 (Md. 2002). The court found that, although the subrogation aspects of the bill were permissible, the retroactive provisions violated Articles 19 and 24 of Maryland Constitution. *Id.* at 1065. Consequently, the Maryland HMO Act, which prohibits subrogation claims, remains applicable to claims made prior to June 1, 2000. *Id; see Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 281 (4th Cir. 2003).

On July 3, 2003, the Fourth Circuit Court of Appeals considered Singh's appeal in light of the decision by the Maryland Court of Appeal's in *Dua*. The Fourth Circuit found that the subrogation prohibition contained in the Maryland HMO Act — which, under *Dua*, applies to those subrogation claims made prior to June 1, 2000 — was saved from ERISA preemption as the state regulation of insurance, and further, and did not impermissibly conflict with the exclusive federal ERISA remedies. Thus, the Fourth Circuit remanded the case to this Court for further proceedings concerning Singh's preemption claims.

On October 7, 2004, Plaintiff filed her Motion to Certify Class. On December 22, 2004, Plaintiff filed a Motion for Entry of Order Certifying Class. On January 11, 2005, Plaintiff filed a Motion for Partial Summary Judgment, in which she requests that this Court enter summary judgment with regards to the issue of liability. On February 7, 2005, Defendant filed a Motion to Strike Plaintiff's Motion for Partial Summary Judgment. The instant motions are ripe for disposition and the Court will now issue an Opinion.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D. Md. 1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. Pro. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### III.    ANALYSIS

#### 1.    Motion for Class Certification

Class certification is governed by the standards set forth in Federal Rule of Civil Procedure 23. Fed. R. Civ. Pro. 23; *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 457 (4th Cir. 2003). Pursuant to Rule 23, the plaintiffs seeking class certification bear the burden of proving that the requirements of both Rule 23(a) and (b)(3) are met. *Id.* In making this determination, the Fourth Circuit Court of Appeals has recognized that "district courts have wide discretion in deciding whether or not to certify a proposed class."

*Id.* (internal citations omitted).

Rule 23(a) requires that each proposed class satisfy each of the following four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. Pro. 23(a); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998). Numerosity is satisfied where the class is so numerous that "joinder of all members is impracticable." *Gunnells*, 348 F.3d at 457. The Fourth Circuit has explained that the final three requirements "tend to merge, with commonality and typicality serving as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (*quoting Broussard*, 155 F.3d at 337).

Additionally, Rule 23(b)(3) requires: (1) that common issues of law and fact predominate over any questions affecting only individual members; and (2) that the class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. Pro. 23(b)(3). The 23(b)(3) requirements are commonly referred to as "predominance" and "superiority." *Gunnells*, 348 F.3d at 457.

In this case, Defendant does not oppose the certification of the following class of persons:

> All persons who: (1) are or have been members or insureds of Prudential Health Care Plan, Inc., t/a Prudential Health Care Plan of the Mid-Atlantic, t/a Prudential Insurance Company of America ("Prudential"); (2) have received medical or health care treatment or services from Prudential; and (3) between and including May 31, 1997 and June 1, 2000, paid a subrogation claim (however described) to Prudential in satisfaction of a lien against or a subrogation interest of Prudential in any monies that the members or insured had received or would receive from a third party.

6

> Excluded from the Class are: (1) federal government employees who are "insureds" under federal employee health insurance contracts governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901, *et seq.*; (2) those individuals who are or have ever been employees of Prudential and the spouses, parents, siblings, and children of all such individuals; (3) Prudential members or insureds who are or have been members of Prudential through ERISA benefit plans that are self-funded within the meaning of 28 U.S.C. Sect. 514(b)(2)(B); (4) Prudential members or insureds who received their insurance with Prudential through Medicare; and (5) Prudential members or insureds who received their insurance with Prudential through plans that are not governed by ERISA.

Additionally, the Court finds that Plaintiff satisfies the requirements of Rule 23(a) and (b)(3). Specifically, the Court finds that the proposed class, which is estimated to be comprised of well over 100 individuals, is sufficiently large such that joinder is impractical. Maintenance of a class action is economical given the similarity between the various plaintiffs' claims, which the Court believes are, on the legal and general factual issues, virtually indistinguishable from one another. The Court sees no divisive issues between such a similarly situated class, and thus finds that the interests of the class members will be fairly and adequately protected. With regards to Rule 23(b)(3), the Court finds that issues common to the class predominate over issues affecting only individual members and that the class action is the superior method to adjudicate the plaintiffs' claims. Indeed, the Court notes that two other courts considering the same issue — whether to certify a class of individuals against whom an insurance company improperly brought subrogation claims — agreed that class certification was appropriate. *See, e.g., Reimer v. Columbia Med. Plan*, Case No. 13-C-96-31528 (Circuit Court Howard County, Maryland 2003) (unpublished disposition), *Balthrop v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, Case No. 211347 (Circuit Court Montgomery County, Maryland 2003) (unpublished disposition).

Defendant, however, conditioned its consent to Plaintiff's Motion for Class Certification upon

7

Plaintiff's demonstration that she is a member of the class that she seeks to certify. On February 7, 2005, Defendant fleshed out this disagreement more fully in its Motion to Strike, which argues that Plaintiff must prove and has not shown that she is entitled to relief under ERISA. In effect, Defendant argues that Plaintiff fails to demonstrate the typicality and adequacy requirements of Rule 23(a).[2] The Court disagrees with Defendant's assertion and will certify the class as requested by Plaintiff.

Defendant argues that Plaintiff has not presented any documents that demonstrate that Plaintiff is a member of the class she seeks to certify. Plaintiff argues that Defendant is estopped from arguing that Plaintiff is not a member of the class that she purports to represent, as Defendant removed this case based upon its repeated and consistent assertions, both to this Court and to the Fourth Circuit Court of Appeals, that Plaintiff's claims were subject to ERISA.

The doctrine of judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995). The application of judicial estoppel is controlled by federal law and is invoked at the court's discretion as the equities of the case demand. *Lowery v. Stovall*, 92 F.3d 219, 223 fn.3 (4th Cir. 1996). Moreover, because judicial estoppel is designed to protect the integrity of the courts, and not the litigants, a party asserting judicial estoppel need not show that the issue was actually litigated in a prior proceeding or prove detrimental reliance. *Id.*

---

[2]The Court would note that this argument is mentioned in passing in Defendant's response to Plaintiff's Motion for Class Certification, itself a mere three pages long despite two extensions of time granted by this Court. Defendant finally explicates its reasoning as to its objection to class certification only in its Motion to Strike, filed on February 7, 2005, four months after Plaintiff filed her Motion for Class Certification. Defendant's strategy has made it difficult for this Court to parse Defendant's true objections, and additionally, has perhaps unfairly allowed it to delay responding to Plaintiff's motion.

Prior to applying the doctrine of judicial estoppel, a court must determine that the following elements are met: (1) the party sought to be estopped must be seeking to adopt a position of fact that is inconsistent with a stance taken in prior litigation; (2) the prior inconsistent position must have been accepted by the court; and (3) the party sought to be estopped must have "intentionally misled the court to gain unfair advantage." *Id.* at 223-24. The Fourth Circuit has explained that the final factor is determinative; it is inappropriate to employ the doctrine when a party's prior position was based on inadvertence or mistake. *Id.* at 24.

In this case, it is plain that Defendant is seeking to adopt a position of fact that is inconsistent with a stance taken in prior litigation. Namely, although Defendant consistently represented that Plaintiff's claims were subject to ERISA, Defendant now attempts to argue that they are not. On July 14, 2000, Prudential filed a Notice of Removal to this federal Court, in which it stated:

> The Plan upon which Plaintiff's claims are based is an employee benefit plan subject to the provisions of the Employee Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* This is a civil action to clarify and enforce rights under the Plan and, thus, invokes this Court's subject matter jurisdiction.

In Prudential's brief to the Fourth Circuit Court of Appeals, Prudential stated:

> On August 8, 2002, this Court, without deciding the jurisdictional or ERISA preemption issues, remanded *Reimer I* to the District Court on the grounds that there was not enough information in the record for this Court to determine, with any degree of certainty whether the health plan in which Mr. Reimer participated was an ERISA plan. *Reimer I*, 43 Fed. Appx. 576 (4th Cir. 2002). *That concern is not an issue in this case as the status of Ms. Singh's health plan as an ERISA plan has not been disputed.*

(emphasis added). In that same brief, Prudential stated:

9

Here, it is undisputed that Ms. Singh was a participant of an ERISA plan. Defendant now seeks to adopt the contrary position — that Plaintiff's claims are not subject to ERISA and therefore she cannot fairly represent the class she seeks to certify. Thus, the first element of judicial estoppel is satisfied.

As to the second element, it is not in dispute that Defendant's prior position, that Plaintiff's claims fall within the purview of ERISA, was accepted by the Court. On December 14, 2000, this Court denied Plaintiff's motion to remand, accepting Defendant's argument that Plaintiff's claims were subject to ERISA jurisdiction.

The essential question, therefore, is whether Defendant intentionally misled the Court to gain unfair advantage. The Fourth Circuit has explained that allowing a litigant to benefit from two deliberately taken, incompatible positions undermines the integrity of the judicial process and allows that litigant to benefit from an unfair advantage. *See King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 198 (4th Cir. 1998).

Here, there is no evidence that Defendants' contrary positions were inadvertently taken; Defendant asserted consistently and repeatedly that Plaintiff's claims were subject to the requirements of ERISA. Moreover, Defendant argued that Plaintiff's claims were subject to ERISA when it suited Defendant's litigation needs, which were to keep Plaintiff out of state court and ensure that her ERISA claim was subject to the recovery limitations set forth in that statute. Now, in a half-hearted attempt to defeat class certification, Defendant posits that Plaintiff is not a member of the class she seeks to have certified because her individual claim is not governed by ERISA. This undermines the integrity of the judicial process and

thus the Court will reject Defendant's present position.[3] *See Colleton Reg'l Hosp. v. Med. Review Sys., Inc.*, 866 F.Supp. 896 (D.S.C. 1994) (holding that where plaintiffs previously took the position that defendant was not an ERISA fiduciary, judicial estoppel prevented plaintiffs from switching positions).[4] For all of these reasons, the Court will enter a class certification order as requested by Plaintiff.

### 2. Motion for Partial Summary Judgment

Plaintiff argues that the legal issues in this case are not in dispute and she is entitled to partial summary judgment on the issue of liability. Additionally, Plaintiff seeks the appointment of a Special Master to determine (1) the composition and identity of the certified class, (2) the amount of subrogation that Defendant collected from the certified class, (3) an appropriate percentage and sum to award for prejudgment interest, and (4) an appropriate award for attorneys' fees and expenses.

As noted previously, summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 250. In this case, there is no dispute that members of the certified class paid subrogation monies to Defendant to which Defendant was not entitled. Thus, the Court does not find, and Defendant does not evidence, any genuine dispute of material fact. Moreover, it is clear that Plaintiff is entitled to summary judgment as a matter of law. As discussed at length above, it is settled law that, pursuant to the Maryland HMO Act, an HMO cannot collect subrogation claims against its members where those claims were made prior to June 1, 2000.

---

[3] Additionally, the Court agrees with Plaintiff that allowing Defendant to assert these two inconsistent positions would allow Defendant to benefit from an unfair advantage; Plaintiff relied upon Defendant's representations concerning her status under ERISA and did not conduct discovery concerning her former employer at the time of her accident.

[4] The Court would also note that there is no evidence before the Court that indicates that Plaintiff's claims are anything other than subject to ERISA jurisdiction.

*Dua*, 805 A.2d at 1065 (Md. 2002); *see Singh*, 335 F.3d at 281.

Defendant does not dispute the substance of Plaintiff's analysis, but rather reasserts, under a variety of labels, its contention that Plaintiff's individual case does not fall within the confines of ERISA. The Court has already rejected this argument.[5] *See Section III (1), supra*. Similarly, the Court is not persuaded by Defendant's argument that partial summary judgment is premature, as Defendant provides no compelling reason in support of its argument, beyond its assertions — already rejected and estopped by this Court — that Plaintiff's case is not subject to ERISA.

Defendant additionally argues in its Motion to Strike that Plaintiff is estopped from recovery because there has been an accord and satisfaction that precludes her claims. Specifically, Defendant claims that Plaintiff negotiated a settlement with Defendant and her present claims are barred by the fact of that settlement. Accord and satisfaction is a method of discharging a contract or cause of action, "whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execution or performance." *Air Power, Inc. v. Omega Equip. Corp.*, 459 A.2d 1120, 1123 (Md. Ct. Spec. App. 1983). Defendant argues that, because it initially sought $1,266.83 in subrogation from Plaintiff, and Plaintiff paid Defendant only $950.12 in satisfaction of that claim, the parties entered into a settlement that this Court should not disturb.

Accord and satisfaction is an affirmative defense. *Wickman v. Kane*, 766 A.2d 241, 245 (Md.

---

[5]The Court additionally rejects Defendant's argument that, in considering this case on appeal, the Fourth Circuit declined to determine that Plaintiff's claims were generally subject to ERISA. *See Singh*, 335 F.3d at 292-93 ("In sum, we conclude that Singh's State common-law claims are claims for benefits due under the terms of an ERISA plan...").

Ct. Spec. App. 2001). To prevail, a defendant must prove: (1) that a dispute arose between the parties about the existence or extent of liability; (2) that, after the dispute arose, the parties entered into an agreement to compromise and settle the dispute by the payment by one party of a sum greater than that which he admits he owes and the acceptance by the other party of a sum less than that which he claims is due; and (3) that the parties performed that agreement. *Id.* Moreover, the dispute between the parties must be bona fide; the debt must be asserted in good faith and liability must be reasonably doubtful. *Id.* Stated differently, consideration is a necessary prerequisite to the application of the doctrine of accord and satisfaction. *Id.* ("Accordingly, payment of a claim or debt that one already is obligated to pay, when the claim or debt is due and owing, ascertainable in amount, and not controverted, will not serve as consideration for an accord.").

In this case, Plaintiff argues that the defense of accord and satisfaction is inapplicable as there was no consideration supporting any agreement between Plaintiff and Defendant. In *Wickman*, the court rejected the defense of accord and satisfaction where the defendant's debt to the plaintiff "was not reasonably doubtful on the law." *Id*. at 249. Here, Plaintiff made the subrogation to Defendant in September 1999. The *Reimer* court explained less than a year later that the subrogation payment was invalid under Maryland law. *Reimer*, 747 A.2d at 683. Additionally, Defendant provides no reason as to why consideration was present at the time of the subrogation payment. Thus, the Court rejects the application of the doctrine of accord and satisfaction in this instance.

Defendant further argues that Plaintiff is estopped from recovery because she has made a voluntary payment to Defendant. Under the voluntary payment doctrine, when an individual voluntarily pays money under a mistake of law, the payor may not ordinarily bring a common law action for the recovery of the

13

money. *Dua*, 805 A.2d at 1085;*see Carducci v. Aetna U.S. Health Care*, 247 F.Supp.2d 596, 619-20 (D.N.J. 2003). However, this doctrine, which is most often applied to cases involving overpayment of taxes or other government fees, does allow an individual to sue for a return of overpayment "if the right to recover it is provided for by statute." *Dua*, 805 A.2d at 1085. Similarly, the *Dua* court recognized that the voluntary payment doctrine, "is obviously inapplicable under circumstances where the common law specifically recognizes an action to recover excess interest which had been voluntarily paid." *Id.* Here, Plaintiff seeks to recover overpayment pursuant to a statute which recognizes a common law action for recovery. As such, the voluntary payment doctrine is inapplicable in the instant case. For all these reasons, the Court will enter summary judgment as to liability in favor of Plaintiff.

The Court will further grant Plaintiff's request to appoint a Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure. Rule 53 authorizes the Court to appoint a Special Master to "hold trial proceedings and make or recommend findings of fact or issues to be decided by the court without a jury if appointment is warranted by ... (ii) the need to perform an accounting or resolve a difficult computation of damages..." In this case, a Special Master would enable the Court to determine (1) the size and composition of the certified class, (2) the amount of subrogation collected from the certified class, (3) a reasonable prejudgment interest rate to apply to the amount paid in subrogation, and (4) the fees and expenses to be awarded to counsel for the certified class. Accordingly, the Court orders that, within fifteen days of the date of this Opinion, Plaintiff and Defendant shall each provide the Court with the names of two individuals that the Court will consider appointing to the position of Special Master.

**IV.    CONCLUSION**

For all of the aforementioned reasons, the Court will GRANT Plaintiff's Motion to Certify Class

[48], GRANT Plaintiff's Motion for Order Certifying Class [62], GRANT Plaintiff's Motion for Partial Summary Judgment [66], and DENY Defendant's Motion to Strike [73]. An Order consistent with this Opinion will follow.

Date:  August 4, 2005                                        /s/
                                                                               Alexander Williams, Jr.
                                                                               United States District Court